**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JAMES A. YAI,<br>Individually and on behalf of all others<br>similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>PROGRESSIVE BAYSIDE<br>INSURANCE COMPANY and<br>SCOTT C. HOWARD,<br><br>      Defendants. | CIVIL ACTION NO.<br>1:08-CV-1369-JOF |

## **OPINION AND ORDER**

This matter is before the court on Defendants' motion to dismiss [2]; Plaintiff's motion to defer ruling on Defendants' motion to dismiss [5]; and Plaintiff's motion to remand [8].

### I.   Background

#### A.   Procedural History and Facts

Plaintiff, James A. Yai, filed this purported class action suit against Defendants, Progressive Bayside Insurance Company and Scott C. Howard, on March 10, 2008, in the Superior Court of Fulton County. Plaintiff's vehicle was insured by Progressive, and Howard was the claims representative for Progressive who was assigned to Plaintiff's

automobile insurance claim. Defendants removed the case to this court on April 9, 2008, on the basis of diversity jurisdiction contending that because Plaintiff sought compensatory and punitive damages in his complaint, his damages would exceed $75,000. Plaintiff does not challenge Defendants' assertion that his damages meet the jurisdictional level. (Plaintiff had previously filed a complaint on his own behalf in Georgia state court and voluntarily dismissed that suit three weeks after Defendants filed a motion to dismiss.)

On October 17, 2007, Plaintiff was involved in a one-car accident which damaged his 2002 Hyundai Accent vehicle. *See* Cmplt., ¶ 7. Progressive evaluated the damages to Plaintiff's car and deemed it "totaled." *Id.* Under the terms of Progressive's insurance policy, Plaintiff was entitled to the actual cash value of his vehicle, less his $500 deductible. *Id.*, ¶ 8. After inspection, Progressive determined that the actual cash value of Plaintiff's vehicle was $4,181.30. *Id.*, ¶ 9. Plaintiff disagrees with this assessment and has provided documentation to Progressive to show the actual value is higher. *Id.*

On November 9, 2007, Plaintiff made demand upon Defendant for unconditional payment of $3,681.30 (Progressive's determined value less Plaintiff's deductible). *Id.*, ¶ 10. Progressive refused to make payment to Plaintiff without receiving full and complete release of its policy obligations. *Id.*, ¶ 11.

Plaintiff seeks certification of a class of individuals who purchased insurance from Progressive between November 9, 2002 and November 9, 2007, made a claim for total loss

2

on their vehicle, and were paid the actual cash value as determined by Progressive and its representatives. *Id.*, ¶¶ 12-20. Plaintiff describes the common questions of fact and law to be whether: (A) Progressive misrepresented what would be paid for total loss; (B) the manner in which Progressive calculates actual cash value constitutes fraud or deception to policyholders; (C) Progressive committed the requisite acts of racketeering in the manner in which it adjusts and pays policyholders; (D) Progressive breached its contract by failing to pay total losses as represented in Progressive's marketing and policy language; and (E) Progressive committed unfair and deceptive trade practices in its advertisement, marketing, and inducement to class members to purchase their insurance policy with Progressive. *Id.*, ¶ 15.

Count I of Plaintiff's complaint states a cause of action for breach of contract. Plaintiff alleged that Progressive breached its contract by "refusing to make payment of that amount it acknowledges to at minimum be owed under the terms and provisions of its policy and also for its breach of fiduciary duties owed to the Plaintiff as its insured, including but not limited to the duty to utilize good faith in the assignment of a fair market value." *Id.*, ¶ 22.

Count II outlines Plaintiff's RICO cause of action. Plaintiff alleges that "Defendant Howard has represented that Progressive has an established and inflexible policy of only considering NADA book estimates in arriving at the fair market value of a vehicle." *Id.*,

3

¶ 25. "The insistence upon the utilization of NADA book estimates is a violation of the policy terms, Georgia law and part of a deliberate pattern and practice designed to force insureds to accept settlement amounts lower than they are entitled." *Id.*, ¶ 26. Plaintiff further contends that part of this "deliberate pattern and practice" involves Progressive refusing to make payments to its insured unless it is fully released of its policy obligations. *Id.*, ¶ 27. "Progressive responds to rejection of its assigned values by requiring its insured to expend monies and engage in an arbitration process." *Id.*, ¶ 28.

Plaintiff alleges that Defendants' conduct constitutes theft by deception in violation of O.C.G.A. § 16-8-3; theft by conversion, in violation of O.C.G.A. § 16-8-4; and theft by taking, in violation of O.C.G.A. § 16-8-2. *Id.*, ¶¶ 30-32. Plaintiff contends that "Defendant Howard and the Corporate Defendants are all persons within the meaning of O.C.G.A. § 16-4-4(a)." *Id.*, ¶ 34. Plaintiff avers that Defendants committed at least two acts of racketeering the purpose of which was to deprive Plaintiff of his property. *Id.*, ¶ 35.

Finally, in Count III of his complaint, Plaintiff alleges that Progressive violated Georgia's Unfair and Deceptive Trade Practice Act, O.C.G.A. § 10-1-372(a)(12), by "engaging in conduct that created the likelihood for confusion and misunderstanding in its potential and existing policyholders by creating the false impression that policy holders and insureds would be paid properly for their total vehicle losses." *Id.*, ¶ 41. Plaintiff alleges

4

that the "actual cash value" paid to insured "was at all times relevant not the fair market value of the vehicles owned by its policyholders." *Id.*, ¶ 42.

Policyholders purchase policies of insurance "through Defendant and its agents and representatives under the false impression that they would be paid appropriately in the event of a total loss. In the event any policy holder wishes to challenge the Defendant's assessment of their [sic] vehicle's 'actual cash value' policyholders such as Plaintiffs would have to engage in a lengthy, burdensome and costly arbitration process." *Id.*, ¶ 43. "Defendant Progressive misled and created confusion and misunderstanding by its policyholders such as Plaintiffs by representing that disagreement as to actual cash value of total loss vehicles may be adjusted if a policy holder simply provided documentation to back up the policy holder's claimed value." *Id.*, ¶ 44.

Plaintiff seeks damages for each of its three causes of action, plus a range of other damages resulting from the alleged fraud, punitive damages, and attorney's fees.

**B.     Contentions**

With respect to Plaintiff's motion to remand, Defendants contend that Plaintiff fraudulently joined Defendant Scott C. Howard in order to preclude federal jurisdiction. Defendants argue that Plaintiff did not make any allegations against Defendant Howard on his breach of contract or deceptive trade practices claim, and Defendant Howard cannot be liable to Plaintiff on the RICO claim. In support of their motion to dismiss, Defendants

5

contend that Plaintiff has not stated a claim for breach of contract because Plaintiff failed to point to any specific contractual provision that Progressive breached. Defendants further aver that Plaintiff can only obtain equitable relief for a deceptive trade practices claim and Plaintiff made no such allegations in his complaint.

Plaintiff responds that the standard to establish fraudulent joinder is very high and a Georgia court would at least recognize the possibility that Plaintiff's RICO claims would stand. In response to Defendants' motion to dismiss, Plaintiff asks the court to allow discovery so that Plaintiff can support his breach of contract and deceptive trade practices claims.

## II. Discussion

### A. Motion to Remand

As the parties both recognize, the court must determine whether it has subject-matter jurisdiction over the litigation and, therefore, first considers Plaintiff's motion to remand. However, Defendants' removal of the case is premised on their assertion that Defendant Scott C. Howard was fraudulently joined. Therefore, the court must evaluate the viability of Plaintiff's claims against Defendant Howard in order to determine the jurisdictional issue. The court's review of Plaintiff's complaint leads to the conclusion that Plaintiff has taken a simple disagreement between an insured and an insurance company over policy provisions and has inartfully attempted to catapult it into a class action state law RICO claim. Those

6

efforts have been unsuccessful. The court finds it telling that Plaintiff failed even to attach a copy of the insurance policy in question to its complaint.

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)). To remand a case removed on the basis of fraudulent joinder, a plaintiff's claim against the resident defendant must only be an arguable one under state law. *Id.* ("[I]f there is even a possibility that the state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court") (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)). In considering allegations of fraudulent joinder, the district court should make its determinations based upon the plaintiff's pleadings at the time of removal and resolve all factual and legal questions in favor of the plaintiff. *See Cabalceta*, 883 F.2d at 1561. When considering whether removal on the basis of fraudulent joinder is appropriate, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538.

7

As an initial matter, the court notes that the only paragraph of Plaintiff's complaint that directly refers to Defendant Scott C. Howard is ¶ 25 which states: "Defendant Howard has represented that Progressive has an established and inflexible policy of only considering NADA book estimates in arriving at the fair market value of a vehicle." *Id.* Certain other paragraphs in Plaintiff's RICO cause of action refer to Defendants in the plural, but this is the only allegation raised against Defendant Howard. Plaintiff's cause of action for breach of contract and violation of Georgia's unfair and deceptive trade practice mentions only "Defendant" in the singular and contains no allegations against Defendant Howard. (In support of its motion to remand, Plaintiff proffers numerous additional factual allegations concerning Defendant Howard, but at both the motion to dismiss and the motion to remand stage, the court may only consider those allegations raised in the complaint.) Thus, the court must consider whether there is "even a possibility" that a Georgia state court would find that Plaintiff's complaint states a civil RICO cause of action against Defendant Howard.

The court first notes that Defendant Howard's mere recitation of Progressive's alleged policy of only considering NADA book estimates on its own does not state any cause of action against Defendant Howard. The allegation only states that Defendant Howard, in his capacity as a representative of Progressive, recited the purported terms of Progressive's policy.

8

Assuming arguendo, however, that the remainder of Plaintiff's civil RICO allegations could somehow be construed as involving Defendant Howard as well, the court considers whether there is "even a possibility" that a Georgia state court would find Plaintiff's complaint states a RICO cause of action against all Defendants. Plaintiff has made only the following allegations against Defendants with respect to the RICO claim. In its class allegations, Plaintiff lists as a common question of fact and law "(C) Progressive committed the requisite acts of racketeering in the manner in which it adjusts and pays policyholders." *Id.*, ¶ 15(C). Plaintiff then asserts that "insistence upon the utilization of NADA book estimates is a violation of the policy terms, Georgia law and part of a deliberate pattern and practice designed to force insured to accept settlement amounts lower than they are entitled." *Id.*, ¶ 26. Plaintiff further contends that part of this "deliberate pattern and practice" involves Progressive refusing to make payments to its insured unless it is fully released of its policy obligations. *Id.*, ¶ 27. "Progressive responds to rejection of its assigned values by requiring its insured to expend monies and engage in an arbitration process." *Id.*, ¶ 28. The three wrongs can generally be stated as (1) use of NADA book estimates to determine actual cash value, (2) refusal to pay insureds unless it is released from policy obligations, and (3) use of an arbitration process in order to make contesting Progressive's actual cash value assessment "financially unviable."

9

Although numerous problems exist with Plaintiff's RICO claim, the court will focus only on Plaintiff's failure adequately to allege any act of racketeering activity on the part of Defendants. Georgia's RICO statute states that it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." *See* O.C.G.A. § 16-14-4. A "pattern of racketeering activity" is defined as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ." *Id.*, § 16-14-3. Under the statute, "racketeering activity" is defined as the commission of a crime in any of thirty-one specified categories of offenses (known as predicate offenses). *See* O.C.G.A.§ 16-14-3(3). If a plaintiff proffers no evidence of unlawful predicate acts, his RICO claim will fail. *See Ali v. Fleet Finance, Inc.*, 232 Ga. App. 13, 15 (1998).

Here, Plaintiff alleges three predicate acts in his complaint: theft by deception, theft by conversion and theft by taking. "Theft by deception is committed when a person 'obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." O.C.G.A. § 16-8-3(a). 'A person deceives if he intentionally: (1) Creates or confirms another's impression of an existing fact or past event which is false and which

10

the accused knows or believes to be false; [or] Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed . . . . O.C.G.A. § 16-8-3(b)." *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602, 603 (1994). None of the wrongs alleged by Plaintiff with respect to his RICO claim describes a "false statement" made by Defendants or any omission on the part of Defendants to correct a false impression.

"A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another . . . under an agreement or other known obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation." *Blanton v. Bank of America*, 256 Ga. App. 103, 105 (2002) (citing O.C.G.A. § 16-8-4), *overruled on other grounds*, *Williams Gen. Corp. v. Stone*, 279 Ga. 428 (2005) (holding that predicate act necessary to support civil RICO claim need only be established by preponderance of evidence). Plaintiff has not alleged that Progressive obtained his property or funds for the purpose of making a "specified application" or disposition of his property. Further, Georgia courts have held that the purpose of theft by conversion is to punish fraudulent conversion, not breach of contract. *See*, *e.g.*, *Barrett v. State*, 207 Ga. App. 370 (1993); *Scarber v. State*, 211 Ga. App. 260, 260 (1993) (theft by conversion statute "cannot properly be employed in the enforcement of civil contract rights"). As the court noted above, Plaintiff fails to allege any fraudulent statements in

11

connection with his assertion of RICO claims. Plaintiff also fails to allege how Defendants converted any property interest to their own use.

Finally, Plaintiff alleges that Defendants engage in theft by taking. "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession of, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." O.C.G.A. § 16-8-2. *See also Faircloth v. A.L. Williams & Associates, Inc.*, 206 Ga. App. 764, 766 (1992) ("an action for conversion would lie only for withholding of 'certain bills or coins' and does not lie on account of a mere failure to pay money under the contracts"). Plaintiff has not alleged what property was taken or that there was intent to deprive Plaintiff of property.

In sum, the court finds that Plaintiff has not alleged sufficient facts to sustain any predicate acts for his RICO claim. The court emphasizes that its ruling is based on the failure of Plaintiff even to allege facts that would bring his claim within the cited predicate acts. The court undertakes no substantive evaluation of Plaintiff's allegations themselves. As such, the court finds that there is not "even a possibility" that a state court would find that the complaint states a cause of action against Progressive, let alone Defendant Howard. Therefore, the court finds that Defendant Howard was fraudulently joined and this court may ignore him for jurisdictional purposes. The court has diversity jurisdiction in the case with

AO 72A
(Rev.8/82)

Plaintiff, who is a resident of Georgia, and Defendant, who is a resident of Florida. For the foregoing reasons, the court DENIES Plaintiff's motion to remand [8].

### B. Motion to Dismiss

The court notes that in its response to Defendants' motion to dismiss, Plaintiff asks for "additional time to conduct discovery to further respond to Defendants' motion to dismiss and respond to Defendants' motion for summary judgment." *See* Plaintiff's Resp., at 3. Plaintiff premises this motion on Rule 56(f), a subsection of the Federal Rule of Civil Procedure governing motions for summary judgment. Defendants, however, have not filed a motion for summary judgment. Defendants' motion to dismiss, properly, is based solely on the allegations raised by Plaintiff in his complaint. As such, Plaintiff would not be entitled to any discovery under Rule 56(f) at this stage in the litigation. Furthermore, Plaintiff's request for discovery "to allow Plaintiffs a fair and full opportunity to present to the Court applicable evidence to support their claims," *id.*, is also misplaced. A plaintiff is not entitled to non-jurisdictional discovery before responding to a motion to dismiss based on the allegations in the plaintiff's complaint.

Other than the request for additional discovery, the only argument made by Plaintiff is premised under the motion to dismiss standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which

13

would entitle him to relief"). Of course, the Supreme Court "retired" that most-often cited portion of *Conley* in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), noting that it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. The Supreme Court further noted that although a complaint

> does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65. Plaintiff makes absolutely no argument on the substantive merits of Defendants' motion to dismiss.

With respect to Plaintiff's RICO claim, as Plaintiff himself recognizes, the standard on motion to remand is less stringent than that of a motion to dismiss. *See*, *e.g.*, *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (court's inquiry into validity of claim against non-diverse defendant is less probing than that undertaken in context of motion to dismiss). Because Plaintiff's RICO cause of action could not survive the motion to remand, it cannot survive Defendants' motion to dismiss for the same reasons.

The court next turns to Plaintiff's breach of contract and deceptive trade practices act claims. Plaintiff alleged that Progressive breached its contract by "refusing to make

14

payment of that amount it acknowledges to at minimum be owed under the terms and provisions of its policy and also for its breach of fiduciary duties owed to the Plaintiff as its insured, including but not limited to the duty to utilize good faith in the assignment of a fair market value." *Id.*, ¶ 22. Progressive argues that Plaintiff cannot state a claim for breach of contract because he has not alleged the breach of any specific provision of the insurance policy, and there is no basis in the law to imply "fiduciary duties" to Progressive as Plaintiff's insurer.

Progressive is correct that Plaintiff fails to identify any particular provision of the insurance contract that Progressive is alleged to have breached. The court has already noted the rather inexplicable failure of Plaintiff to attach the insurance policy to his complaint. Further, it has not escaped the court's notice that while Plaintiff complains vigorously of the arbitration provisions in the insurance contract, Progressive claims that Plaintiff's policy contained no arbitration provisions. Finally, the court notes that Plaintiff's breach of contract claim is not what one might expect in this case (an assertion that Progressive breached the manner in which "actual cash value" is to be determined or disputed); rather Plaintiff claims that Progressive breached the contract because it failed to pay out at least the portion of the value that the parties agreed upon. There is precedent for dismissal of breach of contract claims where a plaintiff has failed to point to any particular contractual provision. *See*, *e.g.*, *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426

15

F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) (Thrash, J.) (citing *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005) (breach of contract claim failed because plaintiffs could not identify any contractual provision breached by defendant).

In light of the uncertainty of the actual terms of the insurance policy, the unusual nature of Plaintiff's breach of contract claim, and the new standards set forth in *Twombly*, the court DIRECTS Plaintiff to file an amended complaint as to his breach of contract claim. At the very least, this amended complaint must (1) attach the insurance policy and (2) point to specific provisions of the policy Plaintiff alleges Progressive breached. In his amended complaint, Plaintiff should further address his "fiduciary duty" allegations. Progressive is correct that Georgia law is clear that generally there is no confidential relationship between an insured and an insurer. *See*, *e.g.*, *Monroe v. Board of Regents of University System of Georgia*, 268 Ga. App. 659, 661 (2004) ("Generally, no fiduciary relationship exists between an insured and his or her insurer."). The court further notes that under Georgia law, the implied covenant of good faith and fair dealing in performing a contract is not an "independent contract term." Rather, it is "a doctrine that modified the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*." *See Stuart Enterprises International, Inc. v. Paykan, Inc.*, 252 Ga. App. 231 (2001) (citing *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990)).

16

AO 72A
(Rev.8/82)

Finally, Plaintiff alleges that Progressive violated Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a)(12), by "engaging in conduct that created the likelihood for confusion and misunderstanding in its potential and existing policyholders by creating the false impression that policy holders and insureds would be paid properly for their total vehicle losses." *Id.*, ¶ 41. Plaintiff alleges that the "actual cash value" paid to insured "was at all times relevant not the fair market value of the vehicles owned by its policyholders." *Id.*, ¶ 42. Progressive argues that the only relief available under the Act is equitable, and Plaintiff did not seek equitable relief in his complaint.

O.C.G.A. § 10-1-372(a) provides that a "person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: (12) 'Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.'" *Id.* "It is well established that monetary relief is not authorized under the Uniform Deceptive Trade Practices Act." *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 498 (1995); *Boynton v. State Farm Mutual Automobile Insurance Co.*, 207 Ga. App. 756, 757 n.1 (1993). Plaintiff does not seek any equitable relief in his complaint. Because the court is permitting Plaintiff to amend his complaint with respect to his breach of contract claim, the court will also permit the same on the deceptive trade practice act claim.

The court notes, further, that to a certain extent, Plaintiff's deceptive trade practices act claim is intertwined with his breach of contract claim. In *Bogard v. Inter-State*

17

*Assurance Co.*, 263 Ga. App. 767 (2003), the plaintiff asserted a class action claim on the basis that an insurer collected premiums for a time period where the insurer bore no risk. The court found, however, that the contract for insurance was unambiguous about the times premiums were due and the effective date of the policy. Because the policy was clear, the insured had the opportunity to decide whether to accept its terms and both the plaintiff's breach of contract and deceptive trade practices claim failed. *Id.*

In sum, the court dismisses with prejudice Plaintiff's RICO claims. The court grants Plaintiff leave to amend his breach of contract and deceptive trade practices act claims. Plaintiff is DIRECTED to file an amended complaint within twenty (20) days from the date of this order. The court notes that in light of the procedural history of this case, it will not permit Plaintiff any other attempts to amend his complaint to correct the noted deficiencies.

### III. Conclusion

The court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss [2]; GRANTS Plaintiff's motion to defer ruling on Defendants' motion to dismiss [5]; and DENIES Plaintiff's motion to remand [8].

Plaintiff is DIRECTED to file an amended complaint within twenty (20) days of the date of this order.

**IT IS SO ORDERED** this 12th day of February 2009.

18

AO 72A
(Rev.8/82)

s/ J. Owen Forrester
			J. OWEN FORRESTER
		SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)