# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JAMES A. YAI, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

PROGRESSIVE BAYSIDE
INSURANCE COMPANY and
SCOTT C. HOWARD,

      Defendants.

CIVIL ACTION NO.
1:08-CV-1369-JOF

## OPINION AND ORDER

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [16].

## I. Background

### A. Procedural History

Plaintiff, James A. Yai, filed this purported class action suit against Defendants, Progressive Bayside Insurance Company and Scott C. Howard, on March 10, 2008, in the Superior Court of Fulton County. Plaintiff's vehicle was insured by Progressive and Howard was the claims representative for Progressive who was assigned to Plaintiff's automobile insurance claim. Defendants removed the case to this court on April 9, 2008. (Plaintiff had

previously filed a complaint on his own behalf in Georgia state court and voluntarily dismissed that suit three weeks after Defendants filed a motion to dismiss.) Shortly after they removed Plaintiff's complaint, Defendants filed a motion to dismiss and Plaintiff filed a motion to remand.

In an order dated February 12, 2009, the court denied Plaintiff's motion to remand finding that Plaintiff had fraudulently joined Defendant Howard. The court granted in part and denied in part Defendant's motion to dismiss. The court dismissed with prejudice Plaintiff's state law RICO claims. The court then noted extensive problems with Plaintiff's breach of contract and unfair deceptive trade practices act claims. *See* Order, at 13-18. The court explained, for example, that it could not evaluate Plaintiff's breach of contract claim because Plaintiff did not point to any provision of the insurance contract he claimed was breached, nor did he even attach a copy of the contract to the complaint.

The court also noted the difficulties of raising a deceptive trade practice act claim in light of an unambiguous contract and informed Plaintiff that such a claim did not afford monetary relief and he would need to seek injunctive relief. The court granted Plaintiff leave to filed an amended complaint on the breach of contract and deceptive trade practices act claims, but noted that in light of the procedural history of the case (Plaintiff had already filed and dismissed one complaint in state court), the court would not grant any additional leave for Plaintiff to amend his complaint. Plaintiff then filed an amended complaint.

### B. Amended Complaint

Plaintiff does not attach a complete amended complaint to his motion, but rather only describes those portions of the complaint he intends to amend. Remaining the same from his original complaint are the basic facts that on October 17, 2007, Plaintiff was involved in a one car accident which damaged his 2002 Hyundai Accent vehicle. *See* Amended Cmplt., ¶ 7. Progressive evaluated the damages to Plaintiff's car and deemed it "totaled." *Id.* Under the terms of Progressive's insurance policy, Plaintiff was entitled to the actual cash value of his vehicle less his $500 deductible. *Id.*, ¶ 8. After inspection, Progressive determined that the actual cash value of Plaintiff's vehicle was $4,181.30. *Id.*, ¶ 9. Plaintiff disagrees with this assessment and has provided documentation to Progressive to show the actual value is higher. *Id.*

On November 9, 2007, Plaintiff made demand upon Defendant for unconditional payment of $3,681.30 (Progressive's determined value less Plaintiff's deductible.) *Id.*, ¶ 10. Progressive refused to make payment to Plaintiff without receiving full and complete release of its policy obligations. *Id.*, ¶ 11. Plaintiff then makes various class allegations.

In the amendments to his complaint, Plaintiff describes his breach of contract claim as:

> The Defendant Progressive has breached its contract with the Plaintiff by refusing to make payment in that amount it has determined to at minimum be owed under the terms and provisions of its policy without an agreement that acceptance of such payment constituted satisfaction of the contractual

3

obligations to pay "fair market value." Progressive has acted in bad faith by refusing to abide by the terms of its agreement with the Plaintiff and other policy holders which require Progressive to timely and voluntarily pay those sums due its insureds. This bad faith surpasses a simply contractual dispute with this individual policyholder in that Progressive intentionally delays compensating its insureds for their losses to coerce acceptance of amounts less than true Actual Cash Value by creating economic pressure upon insureds who need some or all of their insurance proceeds in order to obtain a replacement vehicle.

*Id.*, ¶ 22.

Plaintiff adds that Defendant also breached its contract by failing to pay the $3,900 Plaintiff, himself, calculated as "actual cash value." *Id.*, ¶ 74. Defendant further breached its contract by failing to pay "at least" $3,681.30 to Plaintiff. *Id.*, ¶ 77. Defendant has acted in "bad faith and been unduly litigious by withholding payment of all monies, including the $3181.30 it has offered as well as the $3681.30 it has determined as the Actual Cash Value, unless a release is executed." *Id.*, ¶ 78. Plaintiff is entitled to attorney's fees under O.C.G.A. § 13-6-1 [sic]. *Id.*, ¶ 79.

"The Defendant Progressive has engaged in deceptive trade practices by misrepresenting to James Yai and the general public that Progressive will pay what it determines and accepts to be the actual cash value of a total loss when in fact it will not. Progressive has also engaged in deceptive trade practices by refusing to make any payment unless the insured satisfies an undisclosed condition, the execution of a release or other agreement acknowledging satisfaction of Progressive's policy obligations." *Id.*, ¶ 80.

4

"Progressive also has engaged in deceptive trade practices by designating NADA guides, Kelley Blue Book and Black Book as sources for actual cash value estimates and indicating that actual cash value is subject to easy determination." *Id.*, ¶ 81. Defendant has also engaged in unfair trade practices by "withholding of monies which Progressive is obligated to voluntarily and promptly pay in accordance with its policy terms." *Id.*, ¶ 84. "The representation that actual cash value can be determined through the use of specified publications while refusing to respect the values assigned in these publications and requiring insureds to partake in a binding arbitration-type appraisal process which cannot be cost effectively pursued by the insured is violative of Progressive's duty to utilize good faith to effect prompt, fair and equitable settlement of claims in which liability is clear." *Id.* Plaintiff then seeks broad injunctive relief preventing Defendant from undertaking these allegedly bad acts. *Id.*, ¶ 85.

### C. Contentions

In its motion to dismiss, Defendant argues that Plaintiff has failed to state a cause of action for breach of contract because he again fails to point to specific provisions of the insurance contract he claims Defendant breached. Further, Defendant avers, Plaintiff refuses to recognize specific provisions in the policy that contradict Plaintiff's breach of contract theory. Defendant also asserts that Plaintiff cannot satisfy a deceptive trade practices act claim because the contract between the parties is clear and unambiguous. Defendant further

contends that Plaintiff has not properly sought injunctive relief under this claim because he can address only the past harm suffered by him and not future action.

Plaintiff responds that his complaint satisfies the pleading requirements of *Twombly* and recites facts to support three different breach of contract claims. Plaintiff further avers that his unfair trade practices act claim survives Defendant's motion to dismiss because the terms of the contract do not allow Defendant to withhold monies it agrees are owed to Plaintiff. Plaintiff also argues that his claim for injunctive relief is proper because it will protect the other members of the class from future harm.

**II.     Discussion**

**A.     Amendment of Complaint**

The court has now considered two versions of Plaintiff's complaint and two rounds of briefing on Defendant's motions to dismiss and the court is no closer to understanding the legal claims Plaintiff wishes to raise. Despite the fact that the court explained in detail to Plaintiff the failings of his original complaint, the amendment does not come any closer to alleging a recognizable breach of contract claim. Once again, Plaintiff does not point to the specific provisions of the contract he alleges Defendant breached. Plaintiff further fails to acknowledge the specific provisions of the insurance contract which govern the precise dispute between the parties here. As the court will explain below, the contract actually sets forth a procedure to be followed when the insured and the insurer disagree as to the "actual

6

cash value" of a car deemed to be a total loss. The court cannot understand why Plaintiff has recited a breach of contract complaint which refuses to acknowledge this procedure. The parties contractually agreed to this procedure, yet Plaintiff continues to insist that his asserted Kelley Blue Book value of $3,900 should be the last word on the matter of "actual cash value."

Not only does Plaintiff insist that his asserted value must be used, he also insists that Defendant is somehow contractually bound to pay at least the portion of the value both parties agree is owed. That is, Plaintiff argues that so long as Defendant states that its "actual cash value" determination is $4,181.30, Defendant is required to immediately pay that amount (less Plaintiff's $500) deductible and make that payment without any protection of a release. Plaintiff, of course, points to no provision of the contract which would require Defendant to make such a partial payment. As soon as a month after the accident, Plaintiff informed Defendant that he intended to take this claim to litigation. It is no surprise, therefore, that Defendant will not make a payment to Plaintiff in satisfaction of his claim unless Plaintiff signs a release. Nothing in the insurance contract requires such an unconditional partial payment and Plaintiff can conjure no cause of action that will find Defendant liable for failing to make such a payment.

7

**B.    Breach of Contract**

Because Plaintiff refuses to do so, the court will walk through the provisions of the contract dealing with Damage to A Vehicle. *See* Policy, Part IV, starting at 12. The Policy provides that the "limit of liability for loss to a covered auto . . . is the lowest of: a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." *Id.* at 16. The parties agree that this is the relevant limit of liability. The Policy then goes on to state that the "actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs." *Id.* at 17. Part IV also includes an "appraisal" provision which states:

> If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent and impartial appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, we or you may request that a judge of a court of record, in the county where you reside, select an umpire. The appraisers and the umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. You will pay your appraiser's fees and expenses. We will pay our appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between us and you. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

*Id.* at 19. Plaintiff often refers to this as an arbitration provision, but it is clearly not.[1]

---

[1] In a rather unusual argument, Plaintiff also asserts that Defendant has waived its right to enforce the appraisal provision because it chose to engage in the litigation process.

AO 72A
(Rev.8/82)

Attached to his complaint, Plaintiff submits Defendant's initial determination of the "actual cash value" of Plaintiff's car. That letter contains the following paragraph:

> If you disagree with our valuation of your vehicle's actual cash value, we will consider your opinion and may revise our determination if credible information is presented to us. If you are insured with us and the amount of the vehicle's actual cash value remains in dispute, either party may request to proceed under the Appraisal section of your insurance policy contract.

*See* Amended Complaint, Exh. 3, at 1. The letter then went on to give a detailed explanation of how Defendant arrived at the "actual cash value" of $3,681.30. *Id.* Thereafter, Plaintiff's counsel sent a letter disputing that value, apparently based on an Internet Kelley Blue Book value determination. Defendant responded by directing Plaintiff to the Appraisal portion of the policy and asking Plaintiff to provide the name of his disinterested appraiser. *See* Amended Complaint, Exhs. 4-6.

In his response to Defendant's motion to dismiss, Plaintiff proffers that his breach of contract claim encompasses: (1) Defendant's failure to offer the least amount the parties agreed would be owed, (2) Defendant's refusal to pay Plaintiff's determined actual cash value of $3,900, and (3) Defendant's refusal to make any payment to Plaintiff without a

---

Of course, it is Plaintiff who refused to abide by the contractually agreed upon appraisal process and Plaintiff who chose to file suit. Defendant obviously is not a voluntary participant in this litigation. Defendant has in no way waived its right to enforce the appraisal provision of the contract.

In a similarly futile argument, Plaintiff claims that Defendant did not raise the appraisal issue as a defense in this litigation. Defendant has not answered Plaintiff's complaint, but rather has filed the instant motions to dismiss in which Defendant has plainly asserted that Plaintiff failed to follow the dictates of the policy.

9

release. The court finds that these allegations are wholly separated from the reality of the contract provisions. The documents Plaintiff attaches to his complaint, including the policy and correspondence between the parties, clearly demonstrates that Defendant followed the terms of the Policy in directing Plaintiff to comply with the "appraisal" provisions of the contract. Because Defendant followed the terms of the Policy, it cannot be found liable for breach of contract and the court grants Defendant's motion to dismiss on this basis.[2]

**C.    Deceptive Trade Practices Act**

In an attempt to fully understand Plaintiff's Unfair and Deceptive Trade Practices Act claim, the court reviews the exhibits Plaintiff attaches to his complaint. Plaintiff appears to base his deceptive trade practices act claim on a portion of Defendant's website that discusses "When Should You Drop Collision Coverage?" *See* Amended Complaint, Exh. 9. That article has a Q & A as follows:

Q:    What's your vehicle's actual cash value?

A:    This is one of the easier things to determine because you can find several sources that will provide actual cash value (ACV) estimates online or through publications. Common sources for ACV estimates are N.A.D.A Guides, Kelley Blue Book and Black Book. These will give you a good idea of what your vehicle is worth.

---

[2]Plaintiff makes a passing attempt at alleging the "appraisal" provisions of the insurance policy are unconscionable. Although the court has doubts as to the merits of this claim, the court need not reach it because it is Plaintiff who is alleging Defendant breached its contract either by failing to pay Plaintiff what he demanded or by refusing to make an unconditional partial payment. The court has found the contract does not support either of these claims.

AO 72A
(Rev.8/82)

> If you're not sure which source to use, you can contact your insurance company to see how its claims department determines ACV in your area. Often, one of these guides is used by claims representatives to establish a vehicle's ACV.
>
> Remember to be realistic about the condition of your vehicle to get a realistic ACV estimate. If your vehicle has dents, sun damage, torn upholstery, etc., these may lower your vehicle's ACV.

*Id*. Plaintiff points to another Progressive article entitled "Comprehensive and Collision" which as far as the court can discern makes no reference to the determination of "actual cash value." *See* Amended Complaint, Exh. 10. Finally, Plaintiff cites Progressive's description of "Total Loss Concierge Service" which assists policyholders in finding a new car. The description states that whether the policyholder uses the service or finds his own car, Progressive will "pay you your vehicle's actual cash value." *Id.*, Exh. 11.

None of these statements even remotely supports a deceptive trade practices act claim. Only Exhibit 9 relates to a determination of actual cash value. It refers potential customers to numerous guides as a starting point for determining actual cash value of the car. While Kelley Blue Book is one of those mentioned, it in no way states that a policyholder can run a Kelley Blue Book internet valuation and then insist upon Defendant accepting that value as the "actual cash value" of the car. Furthermore, Exhibit 9 is a Q &A provided to customers who are trying to determine the type of insurance coverage they should procure. It is not a contractual provision for the determination of "actual cash value."

11

It is not inconsistent with the more specific provisions of Plaintiff's policy that do govern the calculation of "actual cash value."

Furthermore, and directly addressing Defendant's motion to dismiss, an unfair and deceptive trade practices act claim cannot stand when the contract upon which it is based is clear and unambiguous. *See Bogard v. Inter-State Assurance Co.*, 263 Ga. App. 767 (2003). As the court's breach of contract discussion demonstrates, the insurance policy sets forth a straight-forward and clear procedure to be followed in the event the insurer and the insured could not agree on "actual cash value." None of the exhibits attached to Plaintiff's complaint calls into question the clear and unambiguous nature of the insurance contract. Nor are those exhibits on their own even sufficient to state a claim for an unfair or deceptive trade practice. For these reasons, the court also grants Defendant's motion to dismiss with respect to Plaintiff's unfair or deceptive trade practices act claim.

As the court stated in its February 12, 2009, order, Plaintiff has now had three opportunities to clarify its complaint against Defendant. The court warned Plaintiff at that time that it would not have another chance to amend. The court has found that Plaintiff still fails to asserts a cognizable breach of contract or deceptive trade practices act claim and therefore GRANTS Defendant's motion to dismiss with prejudice.

**III. Conclusion**

AO 72A
(Rev.8/82)

The court GRANTS Defendant's motion to dismiss [16]. The court DISMISSES WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 31st day of August 2009.

                                                 /s J. Owen Forrester
                                                J. OWEN FORRESTER
                              SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)